IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TERRENCE A. HARRIS | : | |
| | : | |
| Plaintiff, | : | Case No. 4:15-cv-00135 |
| | : | |
| v. | : | |
| | : | |
| WILLIAM WENZEL, | : | (Judge Brann) |
| COUDERSPORT BOROUGH POLICE | : | |
| DEPARTMENT, TROOPER/OFFICER | : | |
| TWIGG, and SERGEANT GOODWIN | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM
July 7, 2015

Currently pending before the Court is a Motion to Dismiss filed by

Defendants William Wenzel and Coudersport Borough Police Department, (ECF

No. 3), as well as a separate Motion to Dismiss filed by Defendants Trooper Twigg

and Sergeant Goodwin.  (ECF No. 13).  The matter is ripe for disposition and, for

the reasons discussed below, both Motions will be granted.

## I. BACKGROUND

On December 13, 2014, Plaintiff Terrence A. Harris was subjected to a

traffic stop conducted by Trooper Twigg of the Pennsylvania State Police and later

joined by Officer Wenzel of the Coudersport Police Department.  (ECF No. 1-1, p.

4, ¶¶ 1, 2).  During the traffic stop, Mr. Harris did not produce a valid driver's

1

license; rather, he produced a "Writ of a Freeman's Right to Travel[.]" Id. at ¶ 12.

Mr. Harris also attempted to explain that his vehicle was exempt from

Pennsylvania's vehicle registration requirements before producing documents to

prove the "validity" of his vehicle title and registration. Id. at ¶ 15. These

documents were issued by the "Kingdom of Heaven."[1] Id.

Mr. Harris alleges that, during the traffic stop, the two officers engaged in an

"illegal snatching" of his "Apostatized Documents . . . along with other Legal

Documents secured in a Five Star Document holder[.]" Id. at ¶ 4. During this

"illegal snatching," the officers threw the documents "into the snow/mud" causing

damage to the documents. Id. Mr. Harris' possessions were confiscated, he was

removed from his vehicle, and he was placed in the back of Trooper Twigg's patrol

car while the officers searched his vehicle. Id. at ¶ 16. After the search concluded,

Mr. Harris was released and his personal possessions were returned to him,

although his vehicle was towed and impounded for ten days. Id. at pp. 18, 20. Mr.

Harris alleges that the police committed "theft" by taking his prescription

medications without providing a "receipt." Id. at p. 22.

---

[1] "The Kingdom of Heaven is an organization associated with The Embassy of Heaven in Stayton, Oregon. Calling itself 'God's Government on Earth,' the Embassy of Heaven issues passports, driver and business licenses, and other identification cards to people who have 'separated' from state government and pay a fee." United States v. Hovind, No. 3:06CR83/MCR, 2009 WL 2369340, at *7 (N.D. Fla. July 29, 2009). The Embassy of Heaven also "believes, among other things, that the state does not have the power to issue driver's licenses or require registration of motor vehicles." Knittel v. State Dep't of Safety, No. 01A01-9903-CH-00185, 1999 WL 704746, at *1 (Tenn. Ct. App. Sept. 13, 1999).

Mr. Harris was cited for operating an unregistered vehicle, operating a vehicle without headlights, driving a vehicle without a title certificate, operating a vehicle without the required proof of financial responsibility, and operating a vehicle without a valid inspection.  (ECF No. 14, Ex. A).[2]  He was found guilty on all five counts.  Id.

On January 13, 2015, Mr. Harris initiated this *pro se* action by filing a Notice of Claim with the Court of Common Pleas of Potter County, Pennsylvania.  (ECF No. 1).  Mr. Harris brings claims under 42 U.S.C. §§ 1983 and 1985, alleging that the Defendants have violated his rights under the Second and Fourth Amendments to the United States Constitution through their gross negligence and incompetence.  Id.  On January 21, 2015, the Coudersport Borough Police Department removed the action to this Court.  Id.

## II. LEGAL STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must view all allegations stated in the complaint as true and construe all inferences in the light most favorable to plaintiff.  See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); see also Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  However, "the tenet that a court must accept as true all of

---

[2]  Although these facts are not contained in the complaint, they are available in a state court criminal case disposition.  Such dispositions are public records which the Court may consider. See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3rd Cir. 1993).

the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint. Kost, 1 F.3d at 183.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint. See Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

A complaint should only be dismissed if, accepting as true all of the allegations in the amended complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 663-64.

Federal Rule of Civil Procedure 8 "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, even under this lower notice pleading standard, a plaintiff must

4

make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.  <u>See</u> <u>Twombly</u>, 550 U.S. at 561. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not 'shown' - - 'that the pleader is entitled to relief.'"  <u>Iqbal</u>, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)).

A court may dismiss a claim under Rule 12(b)(6) where there is a "dispositive issue of law."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 326 (1989).  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  <u>Id.</u> at 327.  In considering a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  <u>See</u> <u>Pension Ben. Guar. Corp. v. White Consol. Indus.,</u> <u>Inc.</u>, 998 F.2d 1192, 1196 (3rd Cir. 1993).  The United States Court of Appeals for the Third Circuit has "defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions such as convictions or mistrials[.]"  <u>Id</u>. at 1197.

## III.   DISCUSSION

Defendants present several arguments as to why dismissal is appropriate, including that (1) the suit is barred as a collateral attack on Mr. Harris' conviction, and (2) Mr. Harris has failed to state a claim upon which relief may be granted. See (ECF Nos. 4, 14).[3]  These arguments will be addressed in turn.

## A. Collateral Attack Doctrine

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the United States Supreme Court held that:

> [in] order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentences that has *not* been so invalidated is not cognizable under Section 1983.

<u>Id.</u> at 486–87 (emphasis in original).  This rule does not "engraft an exhaustion requirement upon Section 1983, but rather . . . [operates to] deny the existence of a cause of action" entirely.  <u>Id.</u> at 489.

In determining whether a 1983 claim must be dismissed as a collateral attack, courts "must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the

---

[3] The Defendants also argue that the individual defendants in this case are protected by sovereign immunity against state law claims.  (ECF No. 14).  Because it is not clear if state law claims are alleged, the Court will not address the argument at this time.

complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487.  However, "if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Id. (emphasis in original).

Many of Mr. Harris' claims constitute collateral attacks on his conviction. Most of Mr. Harris' claims allege Fourth Amendment violations based on a purportedly unconstitutional search and seizure of his person and/or property. (ECF No. 1).  Mr. Harris contends that the police did not have probable cause to search him or his vehicle because the traffic stop itself was illegal.  Id. Specifically, he argues that he possessed a valid title and registration, and his "Writ of a Freeman's Right to Travel" provided authorization to drive the vehicle.  Id.

These claims necessarily implicate the validity of Mr. Harris' state court convictions.  Mr. Harris' detainment and search were predicated on a valid stop based on his unregistered vehicle and failure to provide a valid driver's license. This Court could only hold that the police did not have probable cause to stop and search the vehicle if no criminal violation had occurred.  See, United States v. Shakir, 616 F.3d 314, 321 (3d Cir. 2010).  It may well be that the police search was unreasonable, but this is not the proper venue for Mr. Harris to litigate such

concerns – they must first be raised in state court, and thereafter by means of a

petition for a writ of habeas corpus.  Consequently, these 1983 claims are

dismissed without prejudice.

Four of Mr. Harris' Section 1983 claims do, however, survive the test

enunciated in Heck.  These four claims are: (1) police brutality; (2) unlawful

conversion of his medication; (3) the destruction of his "apostatized" documents;

and (4) Second Amendment violations. [4]  A determination on the merits of any of

these allegations would not call into question the validity of Mr. Harris' state court

conviction.  Therefore, these claims are not barred by Heck. 512 U.S. at 487.

## B. Failure to State a Claim

Turning to Mr. Harris' remaining claims, each fails to allege sufficient facts

and will be dismissed with leave to file an amended complaint, with the exception

of his Second Amendment claim. [5]  First, the facts pled by Mr. Harris fail to state a

---

[4] Mr. Harris' Section 1985 claims may also be barred under Heck.  E.g., Amaker v. Weiner, 179 F.3d 48, 51-52 (2d Cir. 1999) (applying Heck to 1985 claims).  However, Mr. Harris has failed to articulate any claim or facts that form a basis for any conspiracy allegations; he has failed to state how the Defendants conspired, or what they may have conspired to accomplished.  Because the Court cannot discern what allegations form the basis of Mr. Harris' conspiracy claims, it is impossible to determine if his Section 1985 claims are barred under Heck.  However, because Mr. Harris has failed to plead sufficient facts to state a plausible claim to relief, and therefore any Section 1985 claims are dismissed with leave to amend.

[5] "When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis in original).  It is not clear that an amendment would be futile, and it would not be inequitable in this instance.  Therefore, the Court will err on the side of caution and grant Mr. Harris leave to amend.

plausible claim to relief for police brutality.  In that regard, Mr. Harris makes two references to police brutality in his complaint – each reference constitutes a mere legal conclusion bereft of any factual support.  He alleges "illegal police brutality and removal from vehicle by physical force" and references "a snatching of my body of brute physical force[.]"  (ECF No. 1-1, ¶¶ 5, 10).  This does not give any indication of what force was used against Mr. Harris; the possible force used by the officer ranges from a tap on the shoulder to near lethal force.  It is impossible to determine the basis of Mr. Harris' complaint, and therefore, impossible to conclude that the facts alleged are sufficient to support any cause of action.

Second, Mr. Harris claims a violation of his Second Amendment rights when the police "[r]epeatedly [lied] to Plaintiff as to [the] validity of [his] PA Concealed Weapons Permit."  (ECF No 1-1, ¶ 10).  Mr. Harris fails to state any alleged violation of his constitutional rights in this respect.[6]  It is of course possible that Mr. Harris is attempting to allege that the police officers seized his firearm despite his valid concealed weapons permit.  In that respect, if the police seized and did

---

[6] Notably, Mr. Harris alleges that State actors violated his Second Amendment rights, a proposition that is invalid as a matter of law.  In that respect, the Supreme Court has continually "reaffirmed that the Second Amendment applies only to the Federal Government."  District of Columbia v. Heller, 554 U.S. 570, 620 n. 23 (2008) (citing Presser v. Illinois, 116 U.S. 252, 265 (1886); Miller v. Texas, 153 U.S. 535, 538 (1894)).  Therefore, it is impossible for Mr. Harris to state a claim for Second Amendment violations against the Defendants, and any amendment to the complaint would be futile.  Consequently, this claim is dismissed with prejudice.

not return his firearm,[7] Mr. Harris would have grounds for suit, albeit not under the Second Amendment.  However, Mr. Harris has not alleged such facts.

Lastly, Mr. Harris advances allegations that the police stole his prescription medications and destroyed his "apostatized" documents during the traffic stop.  Id. at p. 22.  Neither act would constitute a violation of the Fourth Amendment as Mr. Harris claims.  E.g., Wagner v. Higgins, 754 F.2d 186, 194 (6th Cir. 1985) (Contie, J. concurring) (where a plaintiff alleges theft or destruction of personal property by the police, the "appropriate source of constitutional protection against such acts lies not in the fourth amendment but in the due process clause of the fourteenth amendment").  However, giving liberal interpretation to Mr. Harris' complaint, the Court will analyze the allegations under the Fourteenth Amendment.

The Fourteenth Amendment provides that an individual may not be deprived of life, liberty, or property by the government without due process of law.  Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (citing Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).  In general, States are required to provide individuals with notice and an opportunity to be heard before the State effects such a deprivation.  United States v. James Daniel Good Real Prop., 510 U.S. 43, 51

---

[7] To the extent that police seized Mr. Harris' firearm for the brief duration of their search of his vehicle, it is important to note that police officers may confiscate "a weapon that was not obvious contraband based on an officer's reasonable belief that the weapon posed a threat to officer safety."  United States v. Bishop, 338 F.3d 623, 626-27 (6th Cir. 2003) (citing United States v. Chapman, 549 F.2d 1075, 1079 (6th Cir. 1977); United States v. Gray, 484 F.2d 352 (6th Cir. 1973)).

(1993).  However, the Supreme Court has noted that there are circumstances under which such pre-deprivation process is either impracticable or impossible. <u>Parratt v. Taylor</u>, 451 U.S. 527, 539 (1981), <u>overruled on other grounds by</u> <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).

Thus, where a situation demands quick action or where state officials act randomly and without authorization, adequate post-deprivation remedies satisfy the Fourteenth Amendment.  <u>Id.</u> at 541.  If available to the plaintiff, state tort remedies constitute adequate post-deprivation remedies.  <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 213-14 (3d Cir. 2001).

Here, there is no indication that Mr. Harris' state court remedies are inadequate.  To the contrary, Pennsylvania state law provides a cause of action against the police officers for conversion based on their alleged "deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." <u>McKeeman v. Corestates Bank, N.A.</u>, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000) (citing <u>Stevenson v. Economy Bank of Ambridge</u>, 413 Pa. 442, 451 (1964); <u>Bank of Landisburg v. Burruss</u>, 524 A.2d 896 (Pa. Super. 1987), <u>alloc. denied</u>, 516 Pa. 625 (1987)).

Furthermore, because Mr. Harris contends that the police in this instance intentionally stole or destroyed his property without justification, sovereign

immunity would not protect the officers from suit.  As the Third Circuit has noted,

"Section 8550 of Pennsylvania's Political Subdivision Tort Claim Act denies

immunity to any public employee when . . . his or her conduct constitutes, among

other things, 'willful misconduct[.]'" Brown v. Muhlenberg Twp., 269 F.3d 205,

214 (3d Cir. 2001) (quoting Delate v. Kolle, 667 A.2d 1218, 1221 (Pa.Commw.Ct.

1995)).  This includes intentional torts.  Id.  Because Mr. Harris has failed to allege

that state court tort law remedies are insufficient, he has failed to state a claim

upon which relief may be granted.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss (ECF Nos. 3,

13) are granted in full.  All Section 1983 claims related to the purported

unconstitutional search and seizure are dismissed without prejudice.  Any claim

relating to Second Amendment violations is dismissed with prejudice.  Mr. Harris'

remaining claims are dismissed with leave to file an amended complaint.

An appropriate Order will follow.


BY THE COURT:


/s Matthew W. Brann
Matthew W. Brann
United States District Judge